ANNIE JOHNSTON ET AL., APPELLANTS, *v.* WILLIAM MEAGHR ET AL., RESPONDENTS.

MALICIOUS PROSECUTION—PROBABLE CAUSE—FALSE IMPRISONMENT —PLEADING—MISJOINDER OF CAUSES—PROVINCE OF JURY— APPEAL—REVIEW—BREACH OF PEACE—TRESPASS—TITLE—RES JUDICATA—EVIDENCE.

1. The plaintiffs alleged that defendants maliciously and without probable cause commenced a prosecution against plaintiff Annie Johnston; that they falsely charged her with threatening to assault defendant Meaghr and others with deadly weapons; that a warrant issued, upon which she was arrested; that they unlawfully, maliciously, and without probable cause,

imprisoned her, without any right whatever. No demurrer was filed. · *Held*, after verdict and judgment, that the facts stated should be regarded as a count for malicious prosecution.

2. Plaintiff cannot, in one count, rely upon false imprisonment, and malicious prosecution. The foundation facts on which these causes rest differ. The gist of one is the malicious institution of a suit without probable cause. The gist of the other is the illegal and forcible invasion of an individual right to liberty.

3. The plaintiff cannot, in the same count, rely upon two or more distinct matters, each of which, independently of the other, amounts to a good cause of action.

4. While section 3126, 2 Comp. Laws Utah 1888, declares that "there is in this state but one form of civil action for the enforcement or protection of private rights and the redress and prevention of private wrongs," and while all distinctions as to forms of civil actions are abolished, the distinctions as to causes of action remain.

5. In construing pleadings upon demurrer the maximum is that everything shall be taken most strongly against the party pleading. If two meanings present themselves, the one shall be adopted most unfavorable to the pleader. But the rule applicable after trial is that, if two reasonable meanings present themselves, that shall be taken which supports the complaint or plea, not the other, which would defeat it.

6. If there was a substantial conflict in the evidence as to whether defendants, or either of them, caused the prosecution to be commenced, and as to whether the plaintiff made the threats, and as to whether they, or either of them, had a reasonable fear that the crime threatened would be committed, or if there was room for a difference of opinion among reasonable men as to the existence of those facts, it was error to instruct the jury to find for the defendants.

7. Before finding against any of the defendants, the jury were required to believe from a preponderance of the evidence that they caused the prosecution, and that they did not have reasonable cause to believe that plaintiff made the threats, or that they did not have a reasonable fear

that the crime threatened would be committed. If there was room for difference among reasonable men as to the existence of those facts, the evidence should have been submitted to the jury.

8. Probable cause for a criminal prosecution is equivalent to reasonable cause, and consists of facts in the mind of the prosecutor sufficient to lead a person of ordinary caution to believe that the party to be prosecuted is guilty,—as applied to this case, that the offense was threatened by Annie Johnston as stated, and that there was just reason to fear that the crime threatened would be committed.

9. While the ninth section of article 8 of the state constitution declares, "In cases at law the appeal shall be on questions of law alone," this court will examine the evidence to which the ruling was applied so far as necessary to determine whether such ruling was right or wrong.

10. A person who attempts unlawfully to enter upon land in the lawful possession of another cannot require such person in possession to give a bond to keep the peace, because he resists and threatens to shoot if such unlawful attempt is persisted in. Sections 4796, 4798, 2 Comp. Laws Utah 1888, do not apply to threats upon such conditions. Peace warrants, and bonds to keep the peace, are not designed to protect men in doing unlawful acts against others, or against their property. Their purpose is to secure observance of law, not to encourage its violation.

11. Actual possession is *prima facie* evidence of title in fee simple.

12. Mere occupancy of land, however recent, is sufficient evidence of title against any one who cannot show a better claim, and is sufficient to enable him to maintain an action against a stranger.

13. A person in the lawful possession of land has a legal right to prevent an unlawful entry, by any degree of force necessary, short of taking human life.

14. Judgments of magistrates against defendants in prosecutions to bind persons to keep the peace, and in preliminary examinations, are not conclusive. They simply furnish a *prima facie* presumption of probable cause.

15. The plaintiff offered to prove by a witness that defendant Rowe said "that, when plaintiff opposed his men, he directed defendant Meaghr to commence the prosecution, so that he could construct the ditch through the land, and that he also said that, if plaintiffs would promise to let the ditch be constructed peaceably through the land, he would stop the prosecution." *Held*, that the rulings of the court sustaining an objection of defendants to the offer was erroneous; that it was competent, relevant, and material, as against defendant Rowe.

(No. 726.   Decided Feb. 15, 1897.)

Appeal from the Second district court, Box Elder county.  Hon. C. H. Hart, *Judge.*

Action by Annie Johnston and another against William Meaghr and others for malicious prosecution and false imprisonment.  Judgment for defendants.  Plaintiffs appeal.  *Reversed.*

On June 25, 1894, the respondent, William H. Rowe, was the receiver of the Bear Lake & River Irrigation & Canal Company, and on that day the respondent Meaghr was his foreman, in charge of a gang of men and teams engaged in constructing a lateral canal, near Point Lookout, in Box Elder county, upon and through some land which the appellants claimed to be the owners and were in the possession of, and the appellants, on said day, by certain acts and threats and the exhibition of an unloaded Winchester rifle, a pistol and a prod-pole, attempted to and did, in fact, compel Meaghr, his men and teams, to cease the construction of the said lateral canal; and the plaintiff, Annie Johnston, upon said occasion beat and prod the horses used in the work with the pole, in the end of which was a sharp steel prod, and both appellants threatened to shoot Meaghr.

After the perpetration of these acts and threats by the appellants, Meaghr reported the same to Mr. Rowe, who instructed him and another of his employés, one Jarvis by name, to lay the facts before the prosecuting attorney of Box Elder county.

As a result plaintiffs were taken before a justice of the peace and required to give bonds, each in the sum of $200, to keep the peace.

The plaintiffs, failing to give the bond, were, by the respondent Holmgreen as justice of the peace, committed to the custody of the respondent Loveland as sheriff of said county, and the commitment was received in evidence, and the sheriff took the plaintiffs to the county jail of Box Elder county at Brigham City and placed them therein, in the custody of his deputy and jailer, the respondent Baird; and on the second day of July, 1894, the appellants executed and filed their bond of security to keep the peace, and were thereupon immediately released from custody.

On the 18th day of October, 1894, the proceedings instituted before the respondent Holmgreen, as justice, were dismissed by an order of the Fourth judicial district court.

*R. H. Jones,* for appellants.

Where, as in this case, "but one detention is complained of, the party plaintiff may allege in his petition and prove on the trial such facts as show either a cause of action for false imprisonment or one for malicious prosecution or both." 14 Am. Encyc., p. 17, n. 1., citing, *Buer* v. *Clay,* 8 Kan. 580; *Neil* v. *Thorn,* 88 N. Y. 270; *Marks* v. *Townsend,* 97 N. Y. 590; *Barr* v. *Shaw,* 10 Hun (N. Y.) 580; *Bradner* v. *Faulkner,* 93 N. Y. 515; *Wagstaff* v. *Schippel,* 27 Kan. 450; 7 Am. Encyc. p. 687; n. 1. citing, *A. T. Ry. Co.* v. *Reese,* 36 Kan. 593.

The court erred in allowing Justice Holmgreen to testify that he acted in the capacity of justice. It was a question of law. *Vaughn* v. *Gordon,* 28 Am. Dec. 759; *Gurmon* v. *Raymond,* 6 Am. Dec. 202; *Tracy* v. *Williams,* 10 Am. Dec. 102; *Flack* v. *Harrington,* 12 Am. Dec. 171; *Lang* v. *Benedict,* 29 Am. Dec. 93; 7 Encyc. of Law, 669, note.

"A magistrate of inferior court acting without or in excess of jurisdiction, is liable in damages to the party injured thereby, and can show no legal justification under any judicial record. *Piper* v. *Pearson,* 61 Am. Dec. 438; *Clark* v. *May,* 61 Am. Dec. 471; *Bissell* v. *Gold,* 19 Am. Dec. 481.

*Evans & Rogers,* for respondents.

The finding of the justice, that there was just reason to fear the commission of an offense against the person or the property of Meaghr and others, *is conclusive evidence of probable cause.* *Crescent City Live Stock, etc., Co.* v. *Butchers' Union, etc., Co.,* 120 U. S. 141; *Whitney* v. *Peckham,* 15 Mass. 243; *Phillips* v. *Village of Kalamazoo,* 53 Mich. 33; *Spring* v. *Besore,* 12 B. Monroe 551; *Griffis* v. *Sellars,* (N. Car.) 31 Am. Dec. 422; *Parker* v. *Huntington,* 7 Gray 36; Cooley on Torts, p. 214; Newell on Malicious Prosecution, p. 299, sec. 22.

Under the same facts and circumstances the action for false imprisonment as against respondent Meaghr, the prosecuting witness, will not lie. *Gillet* v. *Thiebold,* 9 Kan. 292; *Billings* v. *Russell,* 23 Pa. St. 189; *Landt* v. *Hilts, et al.,* 19 Barb. 283; *Lancaster* v. *Lane,* 19 Ill. 242; *Barker* v. *Stetson,* 7 Gray 53; *Stanton* v. *Schell,* 3 Sanford 329; *Marks* v. *Culmer,* Id. 12.

Zane, C. J.:

This action was brought to recover damages for the alleged malicious prosecution of the plaintiff Annie Johnston. The other defendant is her husband. They allege in their complaint that William H. Rowe was receiver of the Bear Lake & Bear River Irrigation & Canal Company, and that he and the other defendants on June 28, 1894, at the county of Box Elder, in the state of Utah, maliciously and without probable cause, instituted a prosecution before a justice of the peace against the plaintiff Annie Johnston; that they falsely alleged in their complaint that she had threatened to assault defendant Meaghr and others with deadly weapons; that the justice issued a so-called warrant upon such representations; that the defendants thereupon by force compelled her to go with them to Bear River City, in that county, where they unlawfully, maliciously, and without probable cause, imprisoned her; that they then forced her to go to Brigham City; that they imprisoned her and her infant child there in a noisome jail for the space of five days; that the justice of the peace discharged her from the proceedings to keep the peace on the 7th day of July following; and that the district court, to which the case had been taken, dismissed the same on the 18th day of October of the same year. And they alleged damages, special and general, and demanded judgment in a sum named. Thus, the plaintiffs allege that the defendants maliciously and without probable cause prosecuted the plaintiff; and they characterized the warrant upon which she was arrested as a "so-called warrant," and aver that the defendants imprisoned her unlawfully, maliciously, and add that they imprisoned her without any right or authority. In view of the fact that the complaint was not demurred to,

and that the Code has adopted one form for all civil actions, plaintiffs' counsel argues, in effect, that the defendants might be found guilty of false imprisonment, or malicious prosecution; that the court might regard the complaint as stating both or either of those causes of action. In so doing, counsel, in effect, insists that the cause of action may be regarded as based on a trespass committed by defendants against the plaintiff, by unlawfully arresting and detaining her without any legal authority, or on the ground that defendants maliciously, falsely, and without probable cause, prosecuted her. There is but one count in the complaint. Two causes of action are not separately stated. If plaintiffs' position is sound their cause of action stands on a want of probable cause and malice, and also on a trespass. The gist of the one cause of action is the institution of the suit without probable cause, and with malice. The gist of the other cause of action is the unlawful, direct, and forcible invasion of a personal right,—of a person's right to liberty. The foundation fact of each cause of action differs essentially. One charges defendants with directly doing an unlawful act. The other charges them with maliciously and unlawfully causing the magistrate to issue the warrant which caused the constable to make the arrest. "Although any particular fact may be the gist of a party's cause, and the statement is indispensable, it is still a most important principle of the law of pleading that in alleging the fact it is unnecessary to state such circumstances as merely tend to prove the truth of it. The dry allegation of the facts, without detailing a variety of minute circumstances, the evidence of it, will suffice. * * * The object of the science of pleading is the production of a single issue upon the same subject-matter of dispute. The rule relating to duplicity

14 UTAH—28

or doubleness tends more than any other to the attainment of this object. It precludes the parties,—plaintiff as well as defendant,—in each of their pleadings, from stating or relying upon more than one matter constituting a sufficient ground of action in respect to the same demand, or a sufficient defense to the same claim, or an adequate answer to the precedent pleading of the opponent. The plaintiff cannot, by the common-law rule, in order to sustain a single demand, rely upon two or more distinct grounds or matters, each of which, independently of the other, amounts to a good cause of action in respect of such demand." 1 Chit. Pl. 125, 126.

While section 3126, 2 Comp. Laws Utah 1888, declares that "there is in this state but one form of civil action for the enforcement or protection of private rights, and · the redress or prevention of private wrongs," and while all distinctions as to the forms of civil actions are abolished, distinctions as to the causes of actions remain. At the common law "the joinder of actions often depends on the form of the action, rather than on the subject-matter or cause of action." 1 Chit. Pl. p. 199. This author further says that: "The science of special pleading may be considered under two heads: (1) The facts necessary to be stated; (2) the form of the statement." Page 214. In other words, the statement of the cause of action, and the form of the statement. The Code adopts one form for all civil actions, but the facts constituting the various causes of action for which that form is prescribed must differ, as the relationships of the persons claiming rights and the performance of duties must differ; and, as the relationship of the persons against whom such claims are made must differ, the subjects and objects to which such rights and duties must relate, and about which litigation may arise, must differ. Causes of action

arising amid the complicated and varying relationships, conditions, circumstances, and situations of human affairs must differ, and each cause should be described by a statement of its appropriate facts. They should not be jumbled together, to produce confusion and error. Each contract, liability, right, or duty should be separately stated. The particular breach, violation, or negligence should be averred, for each constitutes a distinct cause of action, and each cause should be separately stated that they may be understood. As we have seen, at the common law distinct causes of action cannot be blended in one statement,—one count. And this rule the Code has adopted and declared. At common law the joinder of counts in the same complaint was ordinarily, though not always, determined by the nature of the cause of action. Such joinder must be determined, in all cases, under the Code. In section 3220, 2 Comp. Laws Utah 1888, the causes of action that may be united in the same complaint are classified according to their subject-matter, and, after dividing them into seven classes, the section concludes: "The causes of action so united must all belong to one only of these classes, and must affect all the parties to the action, and not require different places of trial, and must be separately stated; but an action for malicious arrest and prosecution, or either of them, may be united with an action for either an injury to character or to person." This rule authorizes the joinder of a count for malicious prosecution with one for false imprisonment, in the same complaint, but requires them to be separately stated; that is to say, embraced in distinct counts. We have been more careful in the consideration of the point, because the cases of *Railroad Co.* v. *Rice*, 36 Kan. 593, and *Bauer* v. *Clay*, 8 Kan. 580, to which we

have been referred, may be understood as announcing a different rule. Those cases do not clearly distinguish the rule applicable to forms of action from the rule applicable to causes of action.

The foregoing presents the question for determination: Do the facts stated in the complaint describe a cause of action for malicious prosecution, or for false imprisonment? The warrant issued, and upon which the plaintiff Annie Johnston was arrested, is characterized as a "so-called warrant." It is not alleged that the warrant was void, nor do the facts alleged authorize the court to regard it as absolutely void and of no effect. In construing a pleading upon demurrer, the maxim is "that everything shall be taken most strongly against the party pleading, or, rather, that, if the meaning of the words be equivocal, and two meanings present themselves, that construction shall be adopted which is most unfavorable to the party pleading, because it is to be presumed that every person states his case as favorably to himself as possible." But no demurrer was presented to this complaint, and we are called upon to apply the rule applicable after trial, verdict, and judgment, in the light of the evidence, the action of the court, and concessions of parties. And that maxim is, as we think, "that the language of the pleading is to have a reasonable intention and construction, and, where an expression is capable of different meanings, that shall be taken which will support the declaration, etc., and not the other which would defeat it." 1 Chit. Pl. p. 237. Though the meaning of the words of the complaint under consideration may be equivocal, and one meaning supports the count as stating a cause of action for malicious prosecution, and the other does not, we must adopt the former, because that supports the complaint. We must therefore regard the count

under consideration as stating a cause of action for malicious prosecution.

At the conclusion of the evidence and examination of the witnesses, the jury returned a verdict for the defendants, as the court had instructed them. And the court then entered a judgment on the verdict against the plaintiffs, and for the costs incurred in the prosecution and defense of the case. From this judgment the plaintiffs took this appeal, and they assign the instruction to return a verdict for the defendants as error.

If there was a substantial conflict in the evidence before the jury as to whether the defendants, or either of them, caused the prosecution mentioned in the complaint to be commenced, and as to whether the plaintiff Annie Johnston made the threats mentioned in the complaint upon which the warrant against her issued, and as to whether such defendants, or either of them, had a reasonable fear that the crime threatened would be committed, then the instruction excepted to was erroneous. Or, if reasonable men might differ as to the existence of those facts, the instruction was erroneous. Before finding against the defendants, or any of them, the jury were required to believe, from a preponderance of the evidence, that they caused the prosecution, and did not have reasonable cause to believe that plaintiffs made the threats, or that they did not have a reasonable fear that the crime threatened would be committed. And if the evidence left room for a difference of opinion among reasonable men as to the existence of those facts, the court was bound to submit the evidence to the jury. Section 4796, 2 Comp. Laws Utah 1888, authorizes an information to be laid before a magistrate, that a person has threatened to commit an offense against the person or property of another. And section 4798, Id., authorizes the magistrate

to issue a warrant for the arrest of such person, if it appears from the depositions that there is just reason to fear the commission of the crime threatened. Probable cause for a criminal prosecution is equivalent to reasonable cause, and consists of facts in the mind of the prosecutor sufficient to lead a person of ordinary caution to believe that the party to be prosecuted is guilty, or, as applied to this case, that the offense was threatened by Annie Johnston, as stated, and that there was just reason to fear that the crime threatened would be committed. Inasmuch as the court, in giving the charge excepted to, must have assumed that the evidence proved the threats charged probable cause, and the absence of malice, and that there was no substantial conflict in the evidence as to the existence of these facts, we are bound to consider the evidence, in order to determine whether the court announced in its charge the rule of law applicable to the evidence before the jury. While the ninth section of article 8 of the state constitution declares that "in cases at law the appeal shall be on questions of law alone," this court will review the ruling of the court in the case, and will examine the evidence with respect to which it was made, and to which it was applied. Without understanding such evidence, this court cannot decide whether the ruling was right or wrong.

It appears from the evidence that the plaintiffs have been in the actual possession of the tract of land about which this contention arose 16 or 17 years; that plaintiff Annie Johnston claimed to own it; that the tract had been inclosed with a fence, but that it was down at the time and at the place where the defendants attempted to enter; that Meaghr, the prosecutor, and the defendant Rowe, who directed the entry and prosecution, knew that plaintiffs were in the actual possession of their claim;

that Meaghr went to the plaintiff's house on the land the day before the attempted entry was made, and sought plaintiffs' consent to construct an irrigating ditch across the same, which they refused. It also appears that on the morning of the day the defendant Meaghr, with two other men, all directed by Rowe, with a team of four horses, and a plow, attempted to enter upon plaintiffs' land to construct a lateral ditch across the same to the land of one Tarpie; that the plaintiff Annie Johnston, with a stick six or eight feet long, about the size of a broom handle, with a tack in one end of it, met them at the boundary of her land, and forbade them to enter; that they attempted to drive on, regardless of her prohibition; that she applied the tack and stick to the horses, and turned them aside; that the other plaintiff, her husband, was on a horse about 100 feet away, and had a Winchester rifle, which both plaintiffs testified was not loaded, but was used as a bluff; that he also had a pistol, which he said was for defense in case of personal violence. It also appeared that he made some threats in case the defendants persisted in entering the land; that, after two or three attempts to enter, the defendants went away. It does not appear that the women had any deadly weapon, and it appears that she was small. Defendant Meaghr testified that he had no fear of the woman or the man before or after the attempt; that he heard her say the land was hers, and that she would defend it. Witness Rowe testified that he gave one Jarvis orders to bring the case before the prosecuting attorney for prosecution, and in an affidavit in evidence he said that: "Provided Mr. Johnston would allow a ditch to be peaceably constructed, there would be no more objection. What we require is to have that ditch constructed, from my own standpoint."

Undoubtedly the plaintiffs were co-operating to prevent the defendants Meaghr and Rowe from taking their land for a ditch, and the husband threatened to shoot Meaghr and the men that were with him, if they persisted, and his wife, though not armed with any deadly weapon, was sanctioning such threats, and using her stick on the team as they passed on to the land; and, if the entry had been persisted in, there was probably some danger that the husband would shoot. But were such threats, made upon the condition that if defendants persisted in an unlawful purpose, and a forcible and unlawful act, such as sections 4796 and 4798, cited, contemplate? Can one who attempts to take possession of another's land, who is in actual possession, forcibly and unlawfully, when the other forbids, resists, and threatens to shoot, have him arrested and bound over to keep the peace, while he unlawfully appropriates the land to his own use? Can a party, by swearing that he fears another will commit a threatened crime against him if he persists in trespassing on his property, require the other to give a bond to keep the peace while he does the unlawful act? Peace warrants and bonds to keep the peace are not intended to protect men in doing unlawful acts against others. Their object is to secure an observance of law, not to encourage its violation. It does not appear that the defendants proposed to take plaintiffs' land for a public purpose, but this question it is not necessary to decide, because there was no attempt to take it by virtue of the right of eminent domain. No condemnation proceedings had been instituted. The plaintiffs were in actual possession, and that was *prima facie* evidence of title in fee simple. 1 Greenl. Ev. § 109. "Mere occupancy of land, however recent, gives the possessor a title against one who cannot show a better claim, and is sufficient to

enable him to maintain an action against a stranger." 2 Wat. Tresp. p. 246; *Look* v. *Norton*, 55 Me. 103; *Kilborn* v. *Rewee*, 8 Gray 415.

The plaintiffs had the legal right, as against defendants, to defend their possession by any degree of force short of taking human life. 1 Bish. Cr. Law, §§ 857, 861. The plaintiff Annie Johnston did no more than defend her possession against persons who were attempting to take possession of a portion of it and appropriate it permanently to their use without any legal right whatever. It does not appear that there was any probable cause for the prosecution of the plaintiff, and it does not appear that the facts were fully and fairly stated to a competent attorney at law before the prosecution was instituted, and that the prosecution was upon such advice. It is true that the justice decided in favor of the prosecution, and held the plaintiff Annie to give a bond to keep the peace; but when the case was brought before the district court the prosecuting attorney, for the territory, said that probable cause did not exist for the prosecution, and dismissed it. Judgments of magistrates against defendants in prosecutions to bind persons to keep the peace, and in preliminary examinations, are not conclusive. They simply furnish a *prima facie* presumption of probable cause. *Diemer* v. *Herber*, 75 Cal. 287; Newell, Mal. Pros. p. 290; *Bacon* v. *Town*, 4 Cush. 217.

The order holding the plaintiff to bail should have been submitted, with all the other competent, relevant, and material evidence, to the jury, upon the issue of probable cause and malice, under proper instructions.

We are of the opinion that the court erred in instructing the jury to find the issues for the defendants William Meaghr and William H. Rowe. A case for malicious prosecution was not made against the other defendants.

Whether one for false imprisonment against them was shown, it is not necessary to decide as the case stands.

Plaintiffs' counsel, on the trial of this case, offered to prove by witness Annie Johnston that defendant Rowe said at the trial that he informed plaintiff Johnston that he would make the ditch through the land; that, when Johnston opposed his men, he had instructed Meaghr to go and commence the criminal proceeding, so that he could construct the ditch through the land; and that, if Johnston would promise to let the ditch be constructed peaceably through the land, he would then stop the prosecution. The court sustained an objection by defendants' counsel to this offer, and plaintiffs excepted. This testimony was competent, relevant and material upon the issue of probable cause and malice. It would have tended to show the purpose of the prosecution by defendant Rowe,—that it was not to prevent the commission of a threatened crime. It was admissible as against the defendant Rowe.

The record does not clearly present the evidence, objections, exceptions taken, and the ruling of the court upon which other errors are predicated and assigned, and we will therefore not consider them. For the reasons stated, the judgment appealed from is reversed, and the court below is directed to grant a new trial, and to permit such proper amendments as may be necessary to a trial of the case on its merits.

BARTCH and MINER, JJ., concur.